Professional Coin Grading Service v. Duane C. Blake 2015-12-96 Appellant of my co-counsel, Duane C. Blake District Court in this case entered summary judgment of invalidity. I would like to address the anticipation and obviousness issues and point out the flaws in the District Court's analysis. And time permitting, I would like to address also waiver and the alternative grounds for affirmance. To begin with, I would like to direct the Court's attention to Claim 1 in its entirety as set forth on pages 8 and 9 of our opening blue brief. What's missing in the prior art NGC star order in terms of an obviousness analysis? What's missing from that? The limitation that is not taught or suggested by the NGC star prior art is the limitation that is in Part A.I. of the claim that says the coin that's been provided has been fractionally graded within one whole number. That's the only thing that's missing? No, that's not the only one that's missing. That's what we've extensively briefed. But I would also point out that claim limitation AII is also missing from the NGC star prior art. Which is that? That limitation says that the coin has been digitally imaged for the purpose of future comparative assessment. I thought in the NGC system they were digitally imaged. Your Honor, what is digitally imaged by NGC is the holder after the coin has been inserted in that holder. The way to interpret the claim is that in Part A, this is a method claim, it has three steps. Part A says that you are providing an uncirculated coin and that it has been digitally imaged for future comparative assessment. And then Part B says that you have a holder. And Part C says that you include on the label in the holder an indication that the coin has eye appeal, a plus symbol. So because of the structure of the claim, it is necessary that the imaging happen before the coin is inserted into the holder. That's what the claim covers and that is not what NGC does. What's the difference? The difference is on page A970 of the joint appendix, NGC very clearly says that they are taking a picture of the holder. What's the difference in practical terms with doing the imaging of the coin before it's put in the holder and after it's put in the holder? The purpose of imaging before the coin is put in the holder is to prevent coin doctoring. To get a good image of the coin so that you can look to see if it has been broken out of the holder and doctored and then resubmitted for regrading. That is best done by imaging the coin directly and not through the holder. NGC's imaging, as explained on page A970 of the joint appendix, is simply to take an image of the holder for the purpose of seeing if there has been manipulation of the holder or copying of the holder. NGC is trying to prevent counterfeiting of the holder and knockoffs, not necessarily coin doctoring, by their post-holdering imaging. What about the fractional grading? I thought there was evidence in the record that fractional grading went back a long way. Fractional grading has been known in the art. Fractional grading within one whole number in the Sheldon scale has not been demonstrated to be in the art. It's certainly not what NGC does. You say even if it had been done based on a whole number, why isn't it obvious to carry that over to this situation? Well, that is not what the district court said. That is not even a contention that collectors has made in that case. I would submit that if you put that through a rigorous, obvious analysis, we'd have a different case on appeal here. The problem with the obviousness analysis below is we don't know what the district court was thinking. It's de novo review. It's summary judgment, right? That's correct, Your Honor. But there has to be some combination to review, an allegedly obvious combination of the prior art teachings to review, and we don't even know what that would be. What we do know, however, Your Honor, is that NGC subsequently added a plus symbol to its NGC star holder. You might say that was an obvious modification of their prior art teaching. Now, when they added the plus, that was after the invention. It's not prior art. But let's assume that that was obvious. That's not the invention. What you have in that case is a Sheldon scale number followed by possibly two symbols, one of which the star, which denotes eye appeal alone and exclusively, and then possibly the plus symbol, which would denote that the coin deserves a fractionally higher grade on the Sheldon scale. But that's not what is being claimed here by Mr. Blake. Mr. Blake's claim requires one symbol, a plus symbol, and it denotes both a fractionally higher Sheldon score and the fact that there is eye appeal, and the fact that the eye appeal, in fact, is contributing to the fractionally higher score. I mean, his plus symbol is different from the plus symbols in the prior art? Yes. His plus symbol, Mr. Blake's plus symbol, denotes eye appeal. And that's not taught or suggested in the prior art. It denotes eye appeal and the fact that the eye appeal contributes to a fractionally higher Sheldon score. And that's valuable information for collectors to have. I mean, collectors with the lower case C. And that is an innovation here. That's not taught or suggested by the prior art, Your Honors. So in terms of the anticipation, the district court appears to have looked at each claim limitation in isolation and concluded that each claim limitation is taught somewhere in the prior art generally, but the district court did not identify one reference that teaches all claim limitations. That's clearly an improper anticipation analysis, as Your Honors appreciate. The fact that the NGC star symbol does not signify fractional grading at all is very clear from the record. We know it from at least three sources, NGC's own characterization of what the star symbol means, collectors' admissions, and also Mr. Blake's testimony. That's the evidence. In terms of NGC's explanation, if you look at page A2037 of the record, they say very clearly the star designation is used to identify a coin that, in the opinion of NGC's grading team, displays superior eye appeal within that grade, not a higher grade than one without a star. Please don't construe these designations as grades or grades within grades. They're not. I submit that that's very clear and telling. What is the significance of saying that this particular coin has exceptional eye appeal and you have a grade attached to it and you throw the star on there and say that it has exceptional eye appeal? What's the difference between that and saying that it's a better coin than the run-of-the-mind coin at that same grade? Well, the technical grading and determination of eye appeal are two different processes. It could be, but wouldn't you pay more, let's put it that way, for a coin that was 65 star as opposed to 65? Yes, and collectors do pay more for that designation. So isn't that, in a sense, saying that it's better than a 65 without a star? It is better, but better in what sense? That's the distinction. In the NGC prior art, the star designates eye appeal, and that is valuable to coin collectors, for sure. But what is missing from that is information that the collector can discern. Does that mean that it's a 65 plus? Does it mean that it's a 65 that's fractionally going towards 66 or not? You can't tell from the star. Well, it might not give you the same precision that a 66 or a 67 or a 68 would, but it certainly pushes you above 65, right? It may or may not. That's the funny thing about eye appeal. It doesn't push you below 65? Probably not. It would seem to me that what you just answered, that you would pay more for the 65 star, indicates that it pushes it above 65. That is correct. But if you knew that it was fractionally better in its technical grade and had eye appeal, then you would pay even more. If you knew that it only had eye appeal and it's a 65, then you may not pay as much for that coin as a 65 that has both eye appeal and is fractionally better towards 66. So there's some overlap between eye appeal and technical grade on the Sheldon scale, and sometimes the eye appeal translates into a higher fractional grade, and sometimes it doesn't. And that was the uncertainty in the industry before Mr. Blake's invention. Mr. Blake's method of labeling provides that added information. I'm having trouble with the notion that adding fractional grading to a system that has a cruder set of grades is much of an innovation. You could come in with a system that said, we're no longer going to have batting averages with three numbers in them. We're going to have four. So instead of being a 364 hitter, you're a 364-7 hitter. I'm sorry, 364-3 hitter. That's not patentable innovation, is it? That may not, but... So why is this any different from that? Well, as I was saying, Your Honor, there was uncertainty in the art as to when eye appeal contributed to a fractionally better grade or not. And the information provided by the invention's method gives that greater certainty. And so it's not just a matter of saying, yes, this is a better coin than that one. It's adding a plus symbol because, A, it has eye appeal, and, B, that eye appeal is the kind of eye appeal that would contribute to a fractionally better grade. So the invention here is that there was a plus symbol in the prior art, which indicated it was fractionally better on the Sheldon scale or whatever it is. But the invention was using the plus symbol to indicate both fractionally better on the Sheldon scale and eye appeal. Yes, exactly, Your Honor. And I see I'm into my rebuttal time. Unless you have further questions, I'll reserve the rest of my time. Then we'll save it for you, Mr. Phillips. Mr. Meeks. May it please the Court. I'm here on behalf of Collectors Universe. In this case, we're dealing with a history of coin grading. One of the things that happened in coin grading back in the 70s was we had a Sheldon scale invented. For the relevant portion of that scale, there were three numbers, 60, 65, 70. Since that time, or actually at that time, they added something else to this coin grading genre. Now they added the plus symbol or a PQ. That said, I have a 60 coin. It's not a 65, but it's better than a 60. It's the fractional grade. So we have a 60 plus, for example, which is somewhere between a 60 and a 65. That's the way the plus symbol and the PQ started out over time. And what piece of prior art is the best piece of prior art from which we can tell that that is the situation? I think that the best piece of prior art, quite frankly, is the testimony of our expert from the Smithsonian who talked about what the plus symbol means and how it's used. But not the NGC. Because NGC specifically disclaims that it's a fractional grade. NGC is saying that the star itself is not a fractional grade. What our expert explained in his declaration was that when you take together the 65 grade and the star, you say, now I've got a 65 coin. The star tells me within that 65 grade, I have a higher than average eye appeal. Eye appeal being one of the major grading factors on the Sheldon scale, grading technical grades. So when you look at the 65 plus the star, you get a subgrade. You know you've got a fractionally better coin than you have if it's just a 65 with the star. But what does it mean then for NGC to say, this is eye appeal, please do not treat this as a fractional grade? What do you do with that piece of evidence? First, we never deposed NGC. Just to explain, that came in not even as part of the motion. That's not even part of this evidence. But I will explain it. When NGC says that, NGC number one is talking about, are we grading separately a special eye appeal category, a special eye appeal grade? And NGC is saying it's not a special eye appeal grade. Don't treat it like it's an eye appeal kind of grade. It's more information. It gives you more information to know that this is a better coin than a 65. So if I can understand this, in the prior art, you had plus symbols, which indicated that it was better on the Sheldon scale. And you had stars, which indicated that it was better from the point of eye appeal. And that the claimed invention here is using a plus symbol to indicate both. The claimed invention here is not that. That is incorrect. If you actually look at the patent and the interpretation the court has given it, the claimed invention here, when it talks about eye appeal-related indicator, it's not just an eye appeal. It can be anything that has any association with eye appeal. The court in strut eye appeal-related indicator very broadly, it doesn't have to be eye appeal kind of graded. It can be. It doesn't even have to be related to the technical grade. The claim says the plus symbol indicates both eye appeal and it's fractionally better on the Sheldon scale. That's actually not in the patent, if that's what their representation to you is. I thought that reading claim one, I thought that's what it said. No, Your Honor. Two different things are happening in claim one. One is that the coin has been fractionally graded. And two, that there's an eye appeal-related indicator involved in it. Which is the plus symbol. So the plus symbol is both. Is both better on the Sheldon scale and better from the point of eye appeal. It can be. What they say is, so our big invention here is using a plus symbol, which was used in the prior art to show better on the Sheldon scale, to combine the plus symbol and the star from the prior art and say that the plus symbol represents both. I don't know that that's what they're claiming as their invention, but I understand what you're saying. I understand what you're saying. But I think that what you look for, if you want to know what the prior art is, you have to understand that the prior art has been an evolving scale. It has never been static. It has always been moving. It used to be, like I said, 60, 65, 70. Now it's 61, 62, 63, 66, 67, 68, 69. All of those numbers are there, and we're still using a plus symbol to differentiate those. One of the things that our expert pointed out is even using our standard form, which before the invention has just the grade, like an MS65, for example, dealers were going out and putting a plus symbol on a sticker on the outside of our coins saying this isn't just a 65, it's a 65 plus. It was on the outside of our holders. Same thing. Those dealers are once again, and our expert has said, they were doing the same thing with the NGC coins, which had the star symbol. All along, dealers have been putting the little plus symbol on coins and graders to indicate a higher quality coin. There is nothing new in the concept of using the plus symbol to indicate a highly graded coin, even if you've got the star symbol on there. There's even an example in our record of something called a CAC sticker, the green one. The green sticker is another indicator that people have been using for years to indicate this graded coin is above average graded coin, and we believe we even have a picture of a CAC sticker on an NGC star rated coin. This is from back before the patent. This is nothing new. The idea of putting that inside the plastic holder, that's not even new compared to my client, and I will tell you why, because in October of 2006- In terms of the imaging, the NGC system imaged the coin in the holder as opposed to before it was put in the holder. Yes, Your Honor. Is that true? It is true, but it's a clear holder that's designed to be seen through and you can read through it. You can use that image just like you could use an image that's outside the holder. Importantly, the claim here with regard to the imaging is it can be imaged and used for any purpose. It's not limited to the purpose of examining whether or not there's been doctoring to the coin. That's not what this claim is about. He's expanded it to every possible purpose for imaging. The NGC image, since it can be used for a purpose, would also violate the patent if you were looking at the claims themselves. I also think it's important, and I know that the trial court didn't go there, but I'm going to go ahead and bring this up. We did bring it up in our papers. This started out as Mr. Blake inventing a new form of eye appeal grading called Aura. The original patent provisional application, the date he's trying to use as his priority date, has nothing to do, doesn't mention fractional grading, doesn't mention most of the things that have ended up in our final patent. If you compare the specifications in the patent to the actual claims, you'll find that what's described as the invention, which is only Aura, that's the invention that's actually mentioned in the specification, does not appear in the patent. That big change happened after my client announced publicly they were going to the exact thing that Mr. Blake is now complaining about. In March 2010, my client did a big press announcement to everybody at a big numismatic convention, this is what we're going to do. In July, four months later, the patent was amended. It added exactly what my client said they were going to do to the terms of the patent. They were not in there before. The Aura system that was described, it has nothing to do with what my client is doing. We don't use Aura. We don't care about Aura. Aura is the supposedly new item that he invented. The patent office rejected Aura, saying it's obvious, any new method for grading is obvious. The only reason that they allowed Mr. Blake's patent, the only one reason is because of the term fractional grading, and the patent office did not know, did not understand how fractional grading had been used over the years. In this instance, I think that it's important not to relate that patent back to the original provisional filing date. The original claims are not there to support that priority date for the patent. If you take away that priority date, my client's alleged infringing product is prior art itself. That actually ends the analysis because it's a very clean, you know what the provisional says, you know what the final patent says, you just look at those two documents. There's no dispute about what's in those two separate documents. You will not find, and we've detailed it out both in our underlying papers and in our appellate brief, the big differences, huge changes between the prior, the original patent provisional application and the application that was filed in July 2010, which is after my client started using the alleged infringing device. Now, in terms of obviousness... Yes, Your Honor. I believe the NGC discloses all the limitations of the patent. Although it doesn't disclose, for example, the identification or the digital imaging outside of the holder, right? I don't believe that the patent requires that the digital imaging be done outside of the holder. It doesn't use the plus symbol. That's your problem. It does not use a plus symbol, it uses a star symbol. But the patent claims all 40 symbols. Nobody's mentioned the printed matter doctrine, but I wonder whether the plus symbol and the star symbol are equivalent for purposes of printed matter. I believe they are, Your Honor. Anyway, with regard to the other question of obviousness, all of this has been used together. One of the examples I gave is someone who's already doing the exact same thing that Mr. Blake is claiming to do by taking plus symbols and attaching them to the outside of the coin holders, which already have all the other information on them. Now, understand PCGS' coin holders since 2005 have all been imaged. NGC's coins have all been imaged since 2005 digitally. NGC has imaged all of their coins since 2008, both of which predate the patent, the provisional application. So when we talk about adding the sticker with the plus on it, which is what people have been doing, and there's no dispute that that's been happening. They didn't dispute our expert's testimony on that issue. All he's done is take that sticker with the plus and put it inside the holder instead of outside the holder. And it's also undisputed that in October 2007, my client sent an email out to the 3,500, their biggest customers, saying, hey, we're thinking about putting a plus symbol to indicate fractional grading inside of our holders. So in October, almost a year and a half, two years before the patent provisional was filed even, we announced that to the world. So in terms of obviousness, all of these elements have already been combined in the market with very slight variation here. Unless you have questions, I'm going to go ahead and sit down with this, Your Honors. Thank you, Mr. Meeks. Mr. Phillips has a little rebuttal time. Okay, I'd like to make three quick points, Your Honor. The first is I'd like to address Mr. Garrett's testimony, which Mr. Meeks pointed to initially. I think it's telling in this case. The key testimony from Mr. Garrett is on pages A935 through 936 in paragraph 21 of his declaration. What he says there is in essence that a coin with eye appeal is likely, he actually says very likely, to have a better Sheldon grade. But he doesn't say necessarily. And that is in fact the case. It's not necessarily so that a coin with eye appeal will have a higher grade. And collectors frankly assumes that it will in all cases. Did I accurately state what you claim the invention is here in my questioning of your opposing counsel? Yes, Your Honor. That is the invention is you had a plus symbol used for fractional grading on the Sheldon scale before. You had the star to indicate eye appeal. And the invention here is using the plus symbol to indicate both the Sheldon grade and the eye appeal. That's correct, Your Honor. The second point I'd like to make is that in the chronology of events here, it is true that collectors announced the SecurePlus device before the non-provisional application was filed. However, that was after Mr. Blake met with collectors and disclosed his invention to collectors. So the allegation by Mr. Blake is that collectors has taken the invention and misappropriated it in a form that is patent infringement. And the third point I would like to make is simply that just for the sake of housekeeping, there is an error that I want to point out in our blue brief. It's on page 48, line 12. The last word of that line should be just, J-U-S-T, instead of not. And the citation there should be to page 1374 in the record, paragraph 12. And there's a similar error in the reply brief on page 15, and I apologize for that. Unless there are further questions, that's all I have. Thank you, Mr. Phillips. We'll take the case under advisement. Thank you, Your Honor.